**Ulysses BANKS, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant.**

**Civil No. 95–3870 (JEI).**

United States District Court, D. New Jersey.

Sept. 9, 1996.

---

Robert A. Petruzzelli, Jacobs, Schwalbe & Petruzzelli, Cherry Hill, NJ, for plaintiff.

John C. Jeannopoulos, Special Asst. U.S. Atty., Newark, NJ, for defendant.

## OPINION

IRENAS, District Judge:

This is an action brought by plaintiff for judicial review of the denial by the Appeals Council of the Social Security Administration ("SSA") to review a decision by an Administrative Law Judge ("ALJ") which found no "good cause" for plaintiff's untimely filing of appeal and thus dismissed plaintiff's request for a hearing. Defendant argues that this Court does not have jurisdiction because the denial by the Appeals Council does not constitute a "final decision" of the Commissioner. Because we agree that there has been no "final decision" for jurisdictional purposes and do not believe that claimant presents a colorable constitutional claim on which jurisdiction might rest, we will dismiss for lack of jurisdiction.

## I. BACKGROUND

The SSA mailed a reconsideration denial notice to Banks on October 16, 1992. Banks does not dispute that he and his lawyer received the notice shortly thereafter. From the date of receipt, Banks had 60 days in which to file for a hearing before an ALJ. The SSA received nothing from plaintiff within that time frame.

In December 1994 and early 1995, the SSA received two letters from plaintiff's lawyer dated, respectively, December 8, 1994, and January 9, 1995. In these letters, plaintiff's attorney asserted that the request for a hearing had been filed on time. As proof, he attached two letters which he averred had previously been sent to the SSA on or near their indicated dates. One of them was dated December 9, 1993; it inquired about the hearing and referred to an even earlier letter. That earlier letter, which was dated October 22, 1992, forms the basis of plaintiff's claim that his notice was timely filed within 60 days of the denial of reconsideration.

On February 3, 1995, the ALJ dismissed Banks' request for a hearing as not timely filed. The ALJ noted in his dismissal order that plaintiff's request for a hearing, together with the above-mentioned letters, had not been received in the district office until January 6, 1995. The ALJ further noted that the letters were dated December 8, 1994; December 9, 1993; and October 22, 1992. Remarking that the "attorney's follow-ups on alleged letter ... were spaced a year apart," the ALJ concluded that "there is no good cause to extend the time for filing."

Plaintiff appealed. In the letter of appeal, plaintiff's lawyer again stated that the notice of appeal had been timely filed by letter dated October 22, 1992, and suggested that his delay in following up was a product of his familiarity with the "significant backlog in the processing of requests for hearing." On April 18, 1995, the Appeals Council found no compelling basis to vacate, and declined to reverse the Administrative Law Judge's dismissal. The Appeals Council made reference to plaintiff's lawyer's assertions, but concluded that "[t]he Administrative Law Judge, however, declined to accept your attorney's account of the facts in your case. Your attorney has not submitted additional evidence showing either that he mailed a letter requesting a hearing in October 1992, or that he mailed a letter requesting status in December 1993. Neither the documents in your file nor your attorney's assertions provide a compelling basis for vacating the Administrative Law Judge's order of dismissal."

Plaintiff seeks two alternative forms of relief in his complaint. First, he asks that the determination of the Commissioner be reversed and he be awarded SSI benefits. Alternatively, plaintiff asks that the case be remanded to the Commission for a hearing on the merits of his claim.

Plaintiff's brief in opposition to the government's motion to dismiss, however, presents somewhat different arguments from those of his complaint. In his brief, plaintiff argues that, prior to a dismissal for lateness, plaintiff should have been given notice and provided with an opportunity to present evidence in a special hearing on the issue of the timeliness of his filing. Along with his brief, plaintiff has provided an affidavit dated May 14, 1996, and signed by a paralegal employed by plaintiff's lawyer, which states that notice was timely filed.[1]

## II. ANALYSIS

■ Title II of the Social Security Act limits judicial review to a "final decision of the Secretary made after a hearing." 42 U.S.C. § 405(g). The decision by the SSA not to consider an untimely request for review is not a "final decision" subject to judicial review. *Bacon v. Sullivan*, 969 F.2d 1517 (3d Cir.1992)[2]. We therefore do not have jurisdiction to review the merits of the claim or even to review the SSA's determination of the timeliness of filing. *Id.* at 1519.

■ Our lack of jurisdiction is subject to an exception where a plaintiff asserts a "colorable constitutional claim." *Id.* at 1521; *Penner v. Schweiker*, 701 F.2d 256 (3d Cir. 1983). Plaintiff asserts that the failure of the ALJ to notify him that timeliness was at issue and to hold a hearing prior to the "good cause" determination violated his due process rights under the Fifth and Fourteenth Amendments.

A constitutional claim is not "colorable" if it "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or ... is wholly insubstantial or frivolous." *Boettcher v. Secretary of HHS*, 759 F.2d 719, 722 (9th Cir.1985). The mere allegation of a due process violation is not sufficient to raise a "colorable" constitutional claim to provide subject matter jurisdiction. "[I]f the mere allegation of a denial of due process can suffice to establish subject-matter jurisdiction, then every decision of the Secretary would be [judicially] reviewable by

---

1. This affidavit deals with events that took place four years ago. We have reason to believe that plaintiff's lawyer files hundreds if not thousands of such notices every year. We therefore view the affidavit as expressing confidence in office procedure rather than personal recollection.

2. Although the Eleventh Circuit reached a contrary conclusion in *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983), the Third Circuit has explicitly rejected that case. *Bacon*, 969 F.2d at 1520. Indeed, no other Circuit has adopted the *Bloodsworth* holding.

the inclusion of the [magic] words" "arbitrary" or "capricious." *Robertson v. Bowen,* 803 F.2d 808, 810 (5th Cir.1986). "Every disappointed claimant could raise such a due process claim, thereby undermining a statutory scheme designed to limit judicial review." *Holloway v. Schweiker,* 724 F.2d 1102, 1105 (4th Cir.1984). *See U.S. v. Neville,* 985 F.2d 992 (9th Cir.1993) (holding that ALJ's dismissal of claim following claimant's refusal to appear before him because claimant believed that the ALJ was prejudiced against his attorney did not present a *colorable constitutional claim and that jurisdiction was lacking).*

Petitioner asserts that he should have been notified of the ALJ's intention to dismiss the claim for late filing and provided with an *opportunity to present evidence at a hearing,* citing *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1975) (noting requirement of notice and opportunity to be heard prior to taking a property interest, but concluding that "an evidentiary hearing is not required prior to the termination of disability benefits and that the present administrative procedures fully comport with due process." *Id.* at 349, 96 S.Ct. at 910). The regulations do not require the ALJ to conduct a hearing on the issue of "good cause" under 20 C.F.R. § 416.1411. *Coffey v. Schweiker,* 559 F.Supp. 1375 (D.Kan.1983). Of course, the regulations do not decide the constitutional issue.

Petitioner argues that, if a hearing had been granted, Banks would have testified under oath that he was aware that his lawyer had made a request for an administrative hearing. In addition, the lawyer would have asserted that the request for hearing had been timely filed. Notably lacking from the evidence plaintiff asserts he would produce, however, is any concrete proof of timely filing, such as a file-stamped copy or a certified-mail stub.[3]

We fail to see how notice and a hearing would provide the ALJ with any more information than he had at the time he made his ruling. Banks was clearly aware of the timeliness issue prior to the ALJ's determination, as demonstrated by his submission of his previous letters and his assertion that the initial request for hearing was timely filed. Banks' lawyer already affirmed in his letters that the initial request was timely filed. And the ALJ clearly considered all this evidence in making his determination. He simply found that plaintiff's laxness in pursuing his claim and inability to prove timely filing did not warrant a "good cause" extension of time to file. The Appeals Council reviewed the evidence and affirmed. Plaintiff has already submitted all probative evidence and obtained two rulings. We cannot see what purpose an additional evidentiary hearing would serve and fail to see how—given a determination of the "good cause" issue by two fully informed deliberative bodies—plaintiff can assert that the process was defective.

■ Nor do we consider the SSA's implicit holding, that the burden of proving timely filing is properly placed on the filer, to be a violation of plaintiff's constitutional rights. The regulations require that a request for a hearing before an ALJ "must be filed at one of our offices within 60 days after the date you receive notice of the previous determination." 20 C.F.R. 416.1433(b). Whatever weight the old "mailbox rule" may carry for service and other purposes, it is perfectly clear that, for filings in New Jersey state and federal courts, it is actual receipt that counts, and not the date or fact of mailing. *See,* Lite, N.J.Fed.P.Rules, R. 8(d); Pressler, 1995 NJ Court Rules, R. 1:5–6(b) (and the comments to both rules). SSA regulation 20 C.F.R. 416.1433(b) is therefore unambiguously consistent with the general rule that, even

---

**3.** Not only has plaintiff been unable to produce file-stamped copies of the letters dated December 9, 1993 and October 22, 1993, but the SSA has been unable to locate the letters. On June 19, 1996, this court requested a search of all relevant SSA files in an effort to locate the letters. On September 6, 1996, the SSA informed the court that the file search was complete but that the letters had not been found. The SSA avers that

the file maintained by the Southeast Program Service Center was located but that it does not contain the missing letters. A second file, believed to have been located at the Federal Records Center (a file storage facility), could not be located. The file was destroyed in April 1996, pursuant to Department regulations, which provide for destruction of files five years after the final termination event date.

if service is complete upon mailing, filing is complete only on actual receipt.

Although the burden of establishing the SSA's receipt is on the claimant and his attorney, it is not an especially onerous one. Three possibilities come immediately to mind: (1) signed-for hand delivery, (2) certified mail return-receipt requested, and (3) submitting an extra copy of the filing and a self-addressed-stamped envelope and asking the Clerk to file-stamp the copy and return it to the filer. The lawyer who takes a more relaxed approach does so at the peril of her client and herself.[4]

Courts that have found a colorable constitutional claim have frequently faced the opposite of the factual setting before us: that is, where a plaintiff asserts that he did not respond on time because he never received notice from the SSA. *See e.g., Penner v. Schweiker,* 701 F.2d 256 (3d Cir.1983) (where mentally ill claimant sought an ALJ hearing too late because notice had been sent only to him and not to his attorney, claimant presented a colorable constitutional claim and the Circuit reversed the district judge's order of dismissal for lack of jurisdiction and remanded to SSA for a "good cause" determination); *Aponte v. Sullivan,* 823 F.Supp. 277 (E.D.Pa.1993) (SSA's application of res judicata to bar claimant's subsequent claim, where notice may have been defective, presented a colorable constitutional claim, and court ordered parties to more fully brief the due process issue); *Bellantoni v. Schweiker,* 566 F.Supp. 313 (E.D.N.Y.1983) (where claimant argued that his appeal was late because he never received the ALJ's determination, court remanded for a "good cause" hearing); *Giacone v. Schweiker,* 656 F.2d 1238 (7th Cir.1981) (where *pro se* claimant failed to file his request for reconsideration on time and ALJ found no "good cause" for the tardiness and (1) claimant was never informed and never knew that "good cause"

determination was being made, and (2) the "fabian tactics" of the local SSA office with respect to claimant probably provided a "good cause" story that the ALJ never heard, a remand to SSA was ordered for a new "good cause" determination).

Cases where a claimant never receives notice that an agency determination has been made (or is incapable of comprehending the notice) are fundamentally different from the case at bar. It would be unreasonable and perhaps unconstitutional to bar a claimant's right of appeal, without a hearing, based on a government agency's allegation that it mailed a determination, the receipt of which is denied by the addressee.[5] Receipt is entirely beyond the claimant's control. If Banks were asserting that he never received the SSA's determination, and the SSA were nevertheless insisting that his right to appeal had lapsed, we would be concerned. But Banks had complete control over the manner of filing. It was entirely within his power to protect his rights. The SSA cannot reasonably be expected to entertain appeals that are made two years late without some concrete proof of timely filing or a good excuse for tardiness. Banks offers neither.

The SSA itself recognizes the need for a different approach to a claimant's filing of notice with the SSA versus the SSA's mailing of a notice of determination to a claimant. Because a filer can control the manner of his own filing, 20 C.F.R. § 416.1433(b) requires that notice "must be filed at one of our offices." But the time limit for that filing does not start until receipt of notice—"within 60 days after the date you receive notice of the previous determination"—because a claimant clearly has no control over receipt. *Id.* Moreover, 20 C.F.R. § 416.1411(b)(7) considers whether "[y]ou did not receive notice of the initial determination" as an example of a circumstance where "good cause" for tardy filing may be found.

---

4. We note the consistency of this result with the recent holding of the Sixth Circuit in *Carroll v. Commissioner of Internal Revenue,* 71 F.3d 1228 (6th Cir.1995). There, the court held that a taxpayer who had established timely mailing of a tax form (by regular mail) but could not prove timely receipt by the IRS would not be protected from tax liability arising from late filing.

5. We note, however, that an SSA dismissal in such a factual setting has recently been upheld. *Pence v. Shalala,* Civil No. 94–6154 (D.N.J., Feb. 15, 1996). *But see Linder v. Trump's Castle Associates,* 155 B.R. 102 (D.N.J.1993) (Irenas, J.).

Like the *Bacon* court, we conclude that the claimant "received all the process that was due her, and the dismissal of her claim was unreviewable." *Bacon,* 969 F.2d at 1522. The majority of the courts that have faced this issue on similar facts have reached a similar conclusion. *See Burbage v. Schweiker,* 559 F.Supp. 1371 (N.D.Cal.1983) (where plaintiff claimed he requested a hearing before an ALJ within 60 days of his denial of reconsideration, but the SSA did not receive it until shortly thereafter, court held: (1) the Court lacked jurisdiction over merits because there was no "final decision"; (2) the ALJ's "good cause" determination as to late filing was non-reviewable; (3) plaintiff was not constitutionally entitled to a hearing before the ALJ on the "good cause" issue); *Rosario v. Schweiker,* 550 F.Supp. 118 (E.D.N.Y.1982) (where plaintiff thought she had "already filed for a hearing" before the ALJ but apparently had become confused by language difficulties and the SSA received nothing until after the 60 days had elapsed, court lacked jurisdiction because there was no "final decision" and no colorable constitutional claim); *Sheehan v. Secretary,* 593 F.2d 323 (8th Cir. 1979) (Appeals Council's denial of a "good cause" extension following claimant's tardy appeal of ALJ decision non-reviewable).

In the present case, the only relief which we would be jurisdictionally empowered to give would be a remand to the SSA for a "good cause" hearing and determination. We do not believe, however, that a remand is warranted in this case. Plaintiff's constitutional rights have simply not been implicated. Claimant promptly received notice of the SSA's October 16, 1992, determination, and was well aware that timely action was required in order to preserve his right to a hearing before the ALJ. All of the relevant arguments have already been considered (twice) by the SSA, so there is no need for a hearing. Claimant has received due process; further review would be fruitless and wasteful.

Although other courts have noted that this result may seem "harsh," *Sheehan,* 593 F.2d

at 327 [6], and "disturbing," *Thornton v. Bowen,* 1989 WL 281920 (N.D.N.Y.), the flood of cases that the SSA faces can only be managed by the application of firm rules. Banks was clearly in the best position to establish timely filing, and it would have been easy to do so. We agree with the *Sheehan* court that, "the necessity to maintain orderly review requires compliance with orderly procedures," that the SSA is the arbiter of its procedures, and that a claimant's failure to abide by them will ordinarily bar judicial review. *Sheehan,* 593 F.2d at 327. The motion to dismiss will be granted.

---

6. Indeed, the *Sheehan* court dismissed on jurisdictional grounds in spite of its belief that "the overwhelming weight of the evidence supported a disability award for the claimant." 593 F.2d at 325 n. 4.